Filed November 8, 1895.

---

No. 1,883.

## The Indiana Bond Co. v. Bruce.

Street Improvement Assessment. — *Payment by Check.* — *Acceptance.*—*Relates Back to Time of Delivery.*—*Default.*—Payment of a street improvement assessment by the cashing of a check received therefor by the city clerk relates back to the delivery of the check so as to defeat an action by a bondholder under R. S. 1894, sections 3851–3853, to enforce the lien of the assessment as

The Indiana Bond Co. v. Bruce.

upon a default between the time of acceptance and of the payment of the check, although the clerk did not give a receipt or make a note on the tax duplicate, as required by the statute.

JUDICIAL NOTICE.—*Payment of Taxes and Public Improvement Assessments.—Legal Tender Money.*—Courts know judicially that the exigencies in connection with the business of collecting money for taxes and public improvements in a large city are such as to make it absolutely impossible that all or any considerable portion thereof should be paid in legal tender money.

SAME.—*Evidence.—Receipt of Treasurer.—Parol.*—The receipt of the treasurer and the memorandum he is required to make are evidence of payment, but they are not the only evidence thereof. The same may be proved by parol.

From the Marion Superior Court.

*S. M. Richcreek*, for appellant.

*T. S. Rollins*, for appellee.

REINHARD, C. J.—This action was brought by the appellant, who is the holder of an assessment bond issued to a contractor for a street improvement in the city of Indianapolis, against the appellee, the owner of the property improved. It is averred in the complaint that the first payment on the bonds issued on the assessment became due and payable on the third Monday of April, 1895, that being the 15th day of April, 1895; that said appellee wholly failed and neglected to pay the installment of principal and interest which was then due, whereupon the whole assessment became due and payable. It is also averred that the appellant has been compelled to employ an attorney to bring this action, and that a fee for his services is also due. The appellant demands judgment for an amount sufficient to cover all the unpaid installments, with interest thereon, and attorney's fee, and a decree for the enforcement of the assessment lien against the appellee's real estate.

Upon issues joined there was a finding and judgment

for the appellee, the defendant below. Error is assigned upon the ruling of the court :

1. In overruling appellant's motion for a new trial.

2. In admitting certain evidence over appellant's objection and exception.

3. In rendering judgment against appellant.

By these several assignments the sole question presented is that of the liability of the appellee upon the facts established by the evidence introduced. These facts tend strongly to show that the appellee was indebted for a sidewalk improvement and·had taken the benefit of the provisions of the city charter, which permits the payment of such improvements under certain conditions in ten annual installments. R. S. 1894, section 3847. An installment was due and payable to and at the office of the county and city treasurer on or before April 15, 1895. On the 12th day of April, 1895, or three days before the last day for paying the installment, the appellee's father went to the treasurer's office and gave the deputy treasurer a check for an amount sufficient to pay this installment, as well as some taxes and payments for street and sewer improvements, having previously ascertained from such treasurer the amount thereof. The check was payable to S. R. Holt, treasurer, and was delivered to and accepted by Frank W. Miller, deputy treasurer. At the time the check was delivered and accepted there was a sufficient amount in the bank to the credit of the drawer to meet its payment, and this amount remained there on deposit until the check was actually presented at the bank and paid. In the rush of business incident to the closing days of tax-paying time the check was laid aside in the treasurer's office until April 25, 1895, when it was deposited in the bank upon which it was drawn, and with which the treasurer seems to have had an account also, to the

latter's credit, and debited to the account of the drawer. No receipt was issued to the appellee until April 25, 1895, the date on which the check was presented in bank, and credited upon the treasurer's account, and the memorandum of the treasurer on the tax duplicate shows the payment to have been made on the date just named. On April 22, 1895, the appellant presented its bond to the treasurer of Marion county for payment. Payment was refused, and this suit was instituted.

The bond issued to the contractor is a promise to him by the city of Indianapolis to pay the installments as they become due, each installment being represented by a coupon attached to the bond. The assessments are pledged by the terms of the bond as security for the payment thereof, and in case of failure to pay by the property owner when an installment falls due, under the provisions of the statute, the holder of the bond may sue such property owner and enforce the lien for the entire assessment, including attorney's fees. R. S. 1894, sections 3851, 3852, 3853.

Under section 3851, *supra*, it is the duty of the treasurer to collect the assessments and give vouchers for the same. The department of finance for the city is required to charge the treasurer with the amounts of the assessments and interest as it accrues. By section 3853, *supra*, it is provided that the city shall not be liable for failure to collect the installments when due, but a right of action is given the contractor or bondholder for the collection of the claim by enforcement of the assessment lien.

It is the duty of the treasurer, when payments are made to him, to enter the proper credits on the assessment rolls. R. S. 1894, section 3849.

The city is made liable to the contractor for the contract price of the improvements "to the extent of the

money actually received by such city from the assessments for such improvements." R. S. 1894, section 3845.

The city in such cases is represented by the treasurer. A payment to the treasurer is a payment to the city. He is the agent of the city for the purpose of collecting the money. Had the appellee, on the 12th day of April, 1895, paid the treasurer of Marion county an amount in lawful money, sufficient to cover the installment due from the appellee, we apprehend the city would afterwards have been liable to the appellant for the amount so paid. But whether it would be liable or not, we think that in any event the appellee, after such payment, would have been discharged from liability. Hence a payment to the treasurer was a full discharge of the obligation of the appellee. Now, we doubt not that the treasurer had a right to refuse to receive in payment the check tendered by the appellee through his father, and so he would have the right to refuse to receive anything in payment, except coin and United States treasury notes. But, suppose that appellee had tendered the treasurer United States bank notes, and the treasurer had received the same in payment and laid them away in his vault, neglecting to credit the appellee with such payment, or to issue a voucher for the same, would it be contended that after the expiration of the time for the payment of the installment the appellant could maintain an action to enforce a lien on the appellee's property? In the supposed case it would be held, and justly so, we think, that, although the bank notes were not legal tender, yet the treasurer, having accepted the same, and they having inured to the actual benefit and credit of the city, neither the city nor the appellant could be heard to say that such acceptance was not a legal payment which discharged the appellee's liability.

The same rule applies, we think, when a check is given to and accepted by the treasurer in payment of an installment of an assessment for taxes or improvements. The treasurer, of course, accepts the check impliedly on the condition that it will be paid on presentation at the bank. If it turn out that the drawer has no money on deposit, or not sufficient to cover the amount of the check, or if he should withdraw his deposits before the check is actually presented, in other words, if the check is dishonored, it would not be a payment. When a check is accepted and afterward paid on presentation at the bank, the payment relates back to the time of the giving of the check. This is so in ordinary commercial transactions, and we know of no reason why there should be an exception to the rule in a case like the present one. That such is the rule in the commercial world an eminent law writer says there is no conflict among the authorities. Such a payment is treated as a form of cash payment, and, if dishonored, the drawee may resort to his original remedy on the ground that there has been a defeasance of the condition on which the check was given. Benj. Sales, section 1083. It may be said to be only a conditional payment, the condition being that the check will be paid on presentation. But if the condition be complied with, if there be no defeasance, the payment becomes absolute, and relates to the time of the acceptance of the check.

The appellant relies upon the case of *Prather* v. *State Bank*, 3 Ind. 356, in support of the doctrine that a public officer cannot accept anything in payment except legal tender money. A similar ruling was made in *Armsworth* v. *Scotten*, 29 Ind. 495. The doctrine laid down in those cases has been somewhat modified by the later authorities. While it is doubtless still the rule

that if a clerk of a court accepts in payment of a judgment or other matter which he is authorized to collect, anything but legal tender money, and the payment is not made good to the party ultimately entitled to receive it, such party may treat the matter as if no payment whatever had been made ; yet it is now well settled that if such clerk, in payment of any judgment, redemption money or in other cases where he has power to collect money, receive checks, drafts, etc., and be prepared to pay the parties entitled thereto in legal money, the payment is sufficient. *Bowen* v. *Van Gundy*, 133 Ind. 670 ; *Hammann* v. *Mink*, 99 Ind. 279 ; *Boyd* v. *Olvey*, 82 Ind. 294 ; *Jessup* v. *Carey*, 61 Ind. 584.

In such cases the officer is also liable on his bond if he fail to pay over the proper amount in lawful money. *Bowen* v. *Van Gundy, supra.*

The officer in such cases cannot be compelled to receive a check, any more than he could be forced to receive bank notes or anything but legal tender money. But if he accept something other than lawful money, and receive the benefit thereof, why should he not be held accountable the same as if actual money had been paid him? And if the officer is liable on his official bond for the amount so received, whether it be a legal tender or not, the party entitled to the money cannot be injured by the act any more than if such officer had received nothing but legal tender money, and consequently cannot be permitted to repudiate the officer's act.

In *Webb* v. *Watson*, 18 Iowa, 537, it is said : "To a certain extent, the clerk must be recognized as the agent of the purchaser." (The court here refers to a purchaser at a sheriff's sale.) "His powers are by no means so unlimited as to authorize him to receive anything else than money or its equivalent for the redemption. But when, without fraud on the part of the debtor, he receives such

equivalent, and the debtor in good faith receives his acquittance, whatever may be his ultimate liability to the clerk, the creditor or purchaser cannot be heard to repudiate the act of the officer to the extent of defeating the redemption." This language was quoted with approval by our supreme court in *Boyd* v. *Olvey, supra.*

The courts know judicially that the emergencies in connection with the business of collecting money for taxes and public improvements in a city like Indianapolis are such as to make it absolutely impossible that all or any considerable portion thereof should be paid in legal tender money. To hold that the tax-collector may not receive a check in payment of taxes or assessments, such as the one here in controversy, although such check may be promptly honored when presented for payment, would entail immeasurable burdens upon the property owner, as well as the official, without accomplishing a particle of benefit to any except possibly the promoters of litigation. There never was any good reason for the rule contended for, and the modern decisions refuse to apply it to the cases of the character of the present one.

But the appellant's counsel insists that the debt in this case was not discharged, because the treasurer gave no receipt and made no note on the tax duplicate when he received the check. We are unable to perceive how the failure of the officer to do his duty, if it was such failure, could be used to the injury of one who in good faith has discharged every legal obligation resting upon him.

The receipt of the treasurer and the memorandum he is required to make are evidence of payment, but they are not the only evidence thereof. The same may be proved by parol. In the present case there is no disagreement between the officer and the party who made the payment. Both agree that the payment was made. The only person dissatisfied is the holder of the claim

sued on, who, had he but waited a day or so until the busy season of the tax collecting had been passed, would doubtless have received his money without the trouble and expense of a law suit.    We are therefore persuaded that in this case the court has committed no error, and that the appeal should not be sustained.

Judgment affirmed.

Filed November 8, 1895.